Sometime ago this action, presenting a claim for damages under Revised Civil Code Article 2315, was before us on an appeal from a judgment sustaining exceptions of no cause and no right of action. We reversed and set aside that judgment, overruled the exceptions, and remanded the case for trial on its merits. 200 So. 489. Our holding was approved by the Supreme Court on March 3, 1941, by its denying a writ of certiorari.
Plaintiff, Bob Clark, alleged in his petition that while in the employ of defendant, the Southern Kraft Corporation, for six years he worked in close proximity to the beaters that contained acids, liquids and other chemicals necessary in the production of paper; that such beaters were in a bad state of repair and leaked, and he was compelled to walk and stand on the floor where the chemical mixture accumulated and to handle objects saturated with the solution; that because of his more or less constant contact with the chemicals the palms of his hands and soles of his feet became calloused, cracked open, and are sore and tender, which condition prevents his performing labor of any kind. *Page 18 
He further charged that his employer knew or should have known of the leaky condition of the beaters and that the floors were continuously wet with the chemical solution, and it was negligent in failing to remedy the situation and provide for him a safe place to work.
The answer of the Southern Kraft Corporation, now the International Paper Company by virtue of a merger, contained in effect a general denial of plaintiff's averments.
On the trial of the merits there was judgment rejecting the demands of plaintiff and dismissing his suit. He is prosecuting this appeal.
It is undisputed that plaintiff is now experiencing complete disability. As to this, defense counsel comment:
"At the outset, the defendant does not contend that plaintiff is not in a serious condition, or rather, was at the time of the trial in January, of this year. He had large callouses on both hands and on both feet, and, of course, walked with difficulty and could not close his hands without great pain and inconvenience, and, without going further into detail, we wish to call the Court's attention to the fact that we are not contending that plaintiff is not totally and permanently disabled."
A correct description of the work performed by plaintiff is given in the brief of his counsel as follows:
"Plaintiff went to work for defendant company in the year 1932 as a `dumper' in the `beater room' of what is known as the `Bastrop Mill', one of defendant's mills located in Bastrop, Louisiana. He worked for this mill at the same job until October, 1938.
"The `beaters' at the Bastrop Mill were described as large tubs or vats constructed on the principle of wood barrels. They are about five (5) feet deep, ten (10) feet wide and twenty (20) feet long and have a capacity of approximately three thousand (3000) gallons. They are open on top.
"The `beaters' are used to mix the stock for manufacturing paper. This stock is introduced into the beater, certain ingredients are added and a roll inside the beater revolves and mixes the stock.
"This so-called stock that is introduced into the `beaters' is in reality the pulp as it comes from the pulp mill after it has been washed and screened. After the stock is introduced into the beater certain chemicals are added. These chemicals were described as `resin size', allum and a `bleaching powder', which is a combination of chlorine and lime.
"The mixture in the beater is released or dumped by means of a dump gate at the bottom of the beater, which is raised and lowered by a lever on the outside of the beater. It was plaintiff's duty to operate this lever and dump the stock."
Also it is stated in the brief of appellant's counsel that there are two issues of fact to be determined in this litigation, namely:
"First, it must be determined whether or not the `beaters' at the `Bastrop Mill' did in fact leak to such an extent that the floors of the `beater room' and the dump lever were frequently wet with this chemical solution, causing plaintiff's hands and feet to be more or less constantly in contact with it, and
"Second, if it is concluded that such facts did exist, then it must be determined whether plaintiff's condition was brought about by his contact with this solution or resulted from heredity or other natural causes."
Anent the first stated issue, the record discloses that occasionally slight leaks did develop in the beater or vat, resulting in some of the chemical solution finding its way to the concrete floor on which plaintiff stood and worked. But it appears that on the occurrence of a leak the necessary repairs were made shortly thereafter. And the liquid spilling from the defect, as well as that which often overflowed from the vat, remained on the concrete floor for no appreciable time, because the floor was scrubbed and cleaned a number of times each day by an employee known as a floor boy who used hose, clear water and a broom. Undoubtedly it was this cleaning process, rather than a leaking beater, that was responsible for the floor's being frequently in a wet condition.
But assuming for the sake of argument that the beater substance constantly remained on the floor and in it the employee was compelled to stand and work, plaintiff has not proved with legal certainty that his contact with the solution caused his physical disability.
In the first place the several chemists offering testimony during the trial agreed that the stock in the beater was considered as a harmless neutral liquid, meaning that *Page 19 
it was neither an acid nor an alkali. If a variance in its composition occurred, however, it would, as a rule, favor slightly the alkaline side. And those chemists told of persons frequently dipping their uncovered hands into the solution without suffering ill effects therefrom.
Then too the medical experts testifying unanimously stated that the cause of plaintiff's disorder is unknown to the medical fraternity; that usually the disease is inherited, occasionally it is congenital and exceptionally it is acquired; and that more commonly it appears late in life. It is true that those appearing for plaintiff, being two in number, expressed the opinions, predicated almost wholly on the case history given to them, that the condition was brought about by plaintiff's hands and feet being subjected to the constant chemical irritation over the six year period that he worked for defendant. But defendant's two experts reached a different conclusion, they believing that a reaction from the chemical solution would have occurred in a period much shorter than six years, possibly in several months, had that substance been the cause of the ailment.
The trial court, in our opinion, has correctly held that a preponderance of the evidence does not support and favor the demands of plaintiff, and, accordingly, the judgment will be and is affirmed.